IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| T-REX PROPERTY AB, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Joan H. Lefkow |
| | ) | Magistrate Judge Maria Valdez |
| v. | ) | |
| | ) | |
| CONTEXTMEDIA, INC. AND | ) | Civil Action No. 16-4826 |
| CONTEXTMEDIA HEALTH, LLC, | ) | |
| | ) | *Document electronically filed.* |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' ANSWER, DEFENSES, AND COUNTERCLAIMS TO
PLAINTIFF'S AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Defendants ContextMedia, Inc. and ContextMedia Health, LLC ("ContextMedia"),

through their counsel, hereby sets forth their Answer, Defenses and Counterclaims to the

Amended Complaint filed by Plaintiff T-Rex Property AB ("Plaintiff" or "T-Rex") as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the patent laws of the
United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. §§ 271, 281, 283, 284 and 285.

**ANSWER**:

ContextMedia admits that this is an action for patent infringement.  ContextMedia denies

the merits of this action, and therefore, except as expressly admitted, denies all other allegations

set forth in paragraph 1 of the Amended Complaint.

**PARTIES**

2.      Plaintiff T-Rex Property AB is a company organized and existing under the laws
of Sweden with its principal place of business at Vårvägen 6, 18274 Stocksund, Sweden.

**ANSWER**:

1

ContextMedia is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Amended Complaint, and, accordingly, denies the allegations set forth in paragraph 2 of the Amended Complaint.

3. On information and belief, Defendant ContextMedia, Inc., is an Illinois corporation with an office located at 330 N. Wabash Ave., Suite 2500, Chicago, Illinois.

**ANSWER**:

Admitted.

4. On information and belief, Defendant ContextMedia Health, LLC, is a Delaware limited liability corporation with a principal office located at 330 N. Wabash Ave., Suite 2500, Chicago, Illinois. On information and belief, Defendant's registered agent is Corporation Service Company, 2711 Centerville Rd, Suite 400, Wilmington, Delaware 19808.

**ANSWER**:

Admitted.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this patent infringement action under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER**:

Admitted.

6. This Court has personal jurisdiction over Defendant ContextMedia, Inc., because, on information and belief, Defendant has systematic and continuous contacts with Illinois and this judicial district because Defendant has an office located in this judicial district, it regularly transacts business in the State of Illinois and this judicial district and it has thereby purposefully availed itself of the benefits and protections of the laws of the State of Illinois. Furthermore, this Court has personal jurisdiction over Defendant because, as described further below, Defendant has committed acts of patent infringement giving rise to this action within the State of Illinois and has thus established minimum contacts such that the exercise of personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

**ANSWER**:

ContextMedia, Inc. admits that it is subject to personal jurisdiction in this District for this particular action. Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 6 of the Amended Complaint.

7. This Court has personal jurisdiction over Defendant ContextMedia Health, LLC, because, on information and belief, Defendant has systematic and continuous contacts with Illinois and this judicial district because Defendant has an office located in this judicial district, it regularly transacts business in the State of Illinois and this judicial district and it has thereby purposefully availed itself of the benefits and protections of the laws of the State of Illinois. Furthermore, this Court has personal jurisdiction over Defendant because, as described further below, Defendant has committed acts of patent infringement giving rise to this action within the State of Illinois and has thus established minimum contacts such that the exercise of personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

**ANSWER**:

ContextMedia Health, LLC admits that it is subject to personal jurisdiction in this District for this particular action. Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 7 of the Amended Complaint.

8. Venue is proper in this Judicial District under 28 U.S.C. §§ 1391 and 1400(b).

**ANSWER**:

ContextMedia admits that venue is technically proper in this District under 28 U.S.C. §§ 1391 and 1400(b). ContextMedia denies the remaining allegations set forth in paragraph 8 of the Amended Complaint.

## THE PATENTS-IN-SUIT

9. The allegations set forth in the foregoing paragraphs 1 through 8 are hereby realleged and incorporated herein by reference.

**ANSWER**:

ContextMedia incorporates by reference its responses to the preceding allegations of paragraphs 1 through 8 above as though stated herein.

**The '470 Patent**

10.     On January 16, 2007, U.S. Patent Number RE39,470 (the "'470 Patent"), entitled "Digital Information System," was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '470 Patent is attached as Exhibit A to this Amended Complaint.

**ANSWER**:

ContextMedia admits that on January 16, 2007, U.S. Patent Number RE39,470, entitled "Digital Information System," was issued by the United States Patent and Trademark Office. ContextMedia admits that Exhibit A attached to the Amended Complaint purports to be a copy of the '470 Patent.  ContextMedia denies the allegations in paragraph 10 insofar as they allege that the '470 Patent was duly and legally issued.  ContextMedia is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 10 of the Amended Complaint, and, accordingly, denies the allegations.

11.     The '470 Patent is a reissue of U.S. Patent Number 6,005,534, which was filed on July 2, 1996 and which claims priority under 35 U.S.C. § 119(e) to U.S. Provisional Patent Application Number 60/017,403, which was filed on May 14, 1996.  The '534 Patent also claims priority under 35 U.S.C. § 119(a)-(d) to foreign patent application number 9601603-5, which was filed on April 26, 1996 in Sweden.  As "[p]riority under section 119, 365(a), 365(b), 386(a), or 386(b) shall not be taken into account in determining the term of a patent," (35 U.S.C. § 154(a)(3)), the '470 Patent expires 20 years from July 2, 1996.

**ANSWER**:

ContextMedia admits that the face of the '470 Patent indicates that it is a reissue of U.S. Patent Number 6,005,534, and that the face of U.S. Patent Number 6,005,534 indicates that it was filed on July 2, 1996 and claims priority to U.S. Provisional Patent Application Number 60/017,403.  ContextMedia admits that the face of the '534 Patent indicates that it also claims priority to foreign patent application number 9601603-5.  ContextMedia admits that the '470 Patent expired 20 years from July 2, 1996.  ContextMedia denies the allegations in paragraph 11 insofar as they allege that the '470 Patent, '534 Patent, or foreign patent application number

9601603-5 disclose or claim patentable inventions. ContextMedia is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 11 of the Amended Complaint, and, accordingly, denies the allegations.

12. The innovations disclosed in the '470 Patent "relate[] to a method and apparatus for controlling and coordinating" electronic displays "in a digital information system for displaying information on at least one display device . . . said information being displayed in places that are accessible to and frequented by a general public." ('470 Patent at 1:15-21.) "An object of the present invention is to provide a flexible system in which external information mediators are able to dynamically control in real time the transmission of display instructions to a larger public in different places" "and to enable similar or specific information to be displayed in places that are mutually far apart." (*Id.* at 2:39-42; 2:52-54.)

**ANSWER**:

ContextMedia denies the allegation that the '470 Patent discloses "innovations" or discloses or claims patentable inventions. ContextMedia admits that the '470 Patent purports to disclose an invention that "relates to a method and apparatus for controlling and coordinating projectors in a digital information system for displaying information on at least one display device through the medium of at least one projector for each said device, said information being displayed in places that are accessible to and frequented by a general public." '470 Patent col. 1 ll. 15-21. ContextMedia further admits that the '470 Patent states: "An object of the present invention is to provide a flexible system in which external information mediators are able to dynamically control in real time the transmission of display instructions to a larger public in different places situated at any chosen distance apart through projectors which project information onto displays intended therefor. Another object of the invention is to enable pictures, images, messages and announcements to be configured in accordance with modern digital technology, therewith providing rapid communication. A further object of the invention is to enable a picture, image or other information to be changed in practice as often as is desired, in real time, therewith providing direct and immediate communication, and to enable similar or

specific information to be displayed in places that are mutually far apart and to enable message information to be alternated with advertising spots, for instance." '470 Patent col. 2 ll. 39-56. Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 12 of the Amended Complaint.

13.     A system operating according to an embodiment of the '470 Patent can include a control center with a communication interface that connects devices to create and update a display list in real time using control instruction fields sent from external mediators and to transmit and display the desired images to one or more electronic displays that can be controlled independently of other electronic displays. (*Id.* at 3:4-19; 4:42-45.) In embodiments, the control center can include one or more servers, workstations, and databases stored on one or more physical storage devices, and can include redundancy, of both computer hardware and the information stored, where the devices can be connected using a network, such as a LAN (Local Area Network) or by using a cable-carried ISDN solution (Integrated Services Digital Network) or other fixed lines that have a similar capacity. (*Id.* at 4:57-5:16; 5:59-67; 6:41-59; 12:55-13:7.) In one embodiment of the devices or projectors, the projector is a large picture screen in LCD or LED technology or the like that includes or is connected to a computer. (*Id.* at 6:26-32.)

**ANSWER**:

ContextMedia admits that the '470 Patent describes a control center that is "able to create and update a display list in real time with control instruction fields via booking information for display dynamically in time from mediators having drive routine means which are connected to the subscription and which are transparent for the transmission of information to the drive routine means of the control centre for transmission of information in the system.  The display list, which includes control instructions, coordinates and controls the projectors concerned with regard to what shall be displayed, when it shall be displayed, where it shall be displayed and for how long it shall be displayed, and causes each projector, independently of other projectors, to receive the same or different information for display through respective projectors and through the computerized devices, in accordance with the display list." *See* '470 Patent col. 3 ll. 4-19. ContextMedia further admits that the '470 Patent states that "[i]n the main, the system is comprised of a control centre 12 having a communication interface 14 which connects an

unlimited number of computerized devices 16, 18, 20 which are placed at desired distances from one another for the control of projectors 22 whose projector images or pictures are displayed in the aforesaid public places." *See* '470 Patent col. 4 ll. 42-47.

ContextMedia further admits that the '470 Patent states that "[t]he central computer 28 in the control centre 12 also includes databases 30, in the illustrated case two databases. The databases 30 may be externally connected to the central computer. The control centre also includes working stations 32, which are preferably connected to the central computer 28 via a Local Area Network (LAN) in accordance with known techniques." *See* '470 Patent col. 4 ll. 57-63. ContextMedia further admits that the '470 Patent states that "[t]he drawing shows specifically a radio link which forms an interface between the control centre 12 and the computerized devices 16, 18, 20, this interface being a preferred interface, although not necessarily the sole possible interface. Other interfaces for transmitting information between the control centre 12 and the computerized devices 16, 18, 20 may consist of a cable-carried ISDN solution (Integrated Services Digital Network) or other fixed lines that have the same capacity." *See* '470 Patent col. 5 ll. 59-67. ContextMedia further admits that the '470 Patent states that "[a]ccording to one embodiment, the computerized devices 16, 18, 20 may include redundancy by virtue of all databases 36 of hard disks on the stations 16, 18, 20 including the same projector control information or instructions for monitoring the system in a subway station 16, 18, 20. Thus, all information is copied between the station computers 34 and their databases 36 via the communications interface 14 from the central computer 28." *See* '470 Patent col. 6 ll. 41-48. ContextMedia further admits that the '470 Patent states that "when the server is sufficiently powerful, only from one to two servers is required in the control centre 12, instead of three servers 1, 2, 3 as is now the case." *See* '470 Patent col. 12 ll. 65-67.

ContextMedia further admits that the '470 Patent describes an embodiment of "the devices included in the computerized devices 16, 18, 20" where "the projector 22 is replaced with an electronic display (not shown), such as a large picture screen in LCD technology, light-emitting diode technology (LED technology) or the like. The station computer 34 is then included in the large picture screen or is connected externally thereto." *See* '470 Patent col. 6 ll. 26-32. ContextMedia is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 13 of the Amended Complaint, and, accordingly, denies the allegations.

14.     In one embodiment of the invention, personnel operating a work station can enter information to be displayed from an external mediator via projector control instructions in the exposure list created by the server. (*Id.* at 8:10-26.) Operators are able to interrupt a queue in the server in order to update the exposure list with information generated centrally from the control center or with information from an external information mediator. (*Id.*)

**ANSWER**:

ContextMedia admits that the '470 Patent states that "[i]n one embodiment of the invention, there is thus included an alternative to the dynamic updating of the exposure list as mentioned in the aforegoing, i.e. the external information mediators 24 which do not have access to software in the exposure handler are provided with the possibility of having their picture material or exposure material processed by personnel serving the working stations 32, wherein said personnel enter, via the working stations 32, the information that the external mediator 24 wishes to have exposed, or displayed, via projector control instructions in the exposure handler and via the exposure list created by the handler. Personnel at the working stations 32 are thus able to interrupt any queue lists in the server 1 to update the exposure list, via the exposure handler, with information generated centrally from the control centre 12 or with information that is insufficiently processed when received by the server 1 from the external information mediator

24." *See* '470 Patent col. 8 ll. 10-26. ContextMedia is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 14 of the Amended Complaint, and, accordingly, denies the allegations.

15. Information mediators can use an exposure program to deliver complete images (*e.g.* an image, a series of images or a video clip) for display which would not require processing by the control center. (*Id.* at 11:19-28.) These can be dynamically added to the exposure list by the exposure handler. (*Id.*) External information mediators can thus deliver a complete image for display (an image, a series of images or a video clip) which can be processed automatically and inserted into the exposure list, or an administrator can select information from an external mediator and process the information so that it can be inserted into the exposure list via the exposure handler. (*Id.* at 8:27-41.)

**ANSWER**:

ContextMedia admits that the '470 Patent states that "[a] number of working machines or working stations 32 are connected to the central computer 28 for controlling, communicating and processing of exposure or picture material, generating exposure lists through the exposure handler when required, and so on. Alternatively, the information mediators 24 may have their own versions of the exposure program used, thereby enabling the mediators to deliver finished picture sequences/films transparently. These picture sequences/films need not then be prepared in the control centre 12, but can be filled dynamically in the exposure list by the exposure handler." *See* '470 Patent col. 11 ll. 19-28. ContextMedia further admits that the '470 Patent states that "[i]n accordance with the aforegoing, external information mediators 24 that have access to the exposure program are able to deliver complete picture series/films which can be processed automatically and inserted into the exposure list, or optionally personnel administering the working stations 32 are able to pick external mediator information from the queues, or lines, and process this information so that it can be inserted into the exposure list via the exposure handler 3." *See* '470 Patent col. 8 ll. 27-34. ContextMedia is without sufficient information or

knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 15 of the Amended Complaint, and, accordingly, denies the allegations.

**The '334 Patent**

16.    On June 3, 2008, U.S. Patent Number 7,382,334, entitled "Digital Information System," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '334 Patent is attached as Exhibit B to this Amended Complaint.

**ANSWER**:

ContextMedia admits that the face of U.S. Patent Number 7,382,334 indicates that it is entitled "Digital Information System," and that it was issued by the United States Patent and Trademark Office on June 3, 2008.  ContextMedia admits that Exhibit B attached to the Amended Complaint purports to be a copy of the '334 Patent.  ContextMedia denies the allegations in paragraph 16 insofar as they allege that the '334 Patent was duly and legally issued.  ContextMedia is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 16 of the Amended Complaint, and, accordingly, denies the allegations.

17.    The innovations described by the '334 Patent relate to methods and arrangements "for controlling and coordinating" digital display devices "in a digital information system for displaying information on at least one display device" "wherein the information is displayed in places that are accessible to and frequented by a general public." ('334 Patent at Abstract; 1:13-24; 5:20-32.) The present invention is able "to provide a flexible system in which external information mediators are able to dynamically control in real time the transmission of display instructions to a larger public in different places" "and to enable similar or specific information to be displayed in places that are mutually far apart." (*Id.* at 2:56-60; 3:5-11.)

**ANSWER**:

ContextMedia denies the allegation that the '334 Patent discloses "innovations" or discloses or claims patentable inventions.  ContextMedia admits that the '334 Patent purports to disclose an invention that relates to "a method and to an arrangement for controlling and coordinating television sets, with peripheral equipment, or cameras, with peripheral equipment,

in a digital information system for displaying information on at least one display device through the medium of at least one television set or camera for each said device, said information being displayed in places such as cinemas, private homes, onboard air-crafts, onboard trains, onboard ships, main railway stations, subway stations, airport waiting lounges etc, and generally every were [sic] advertisements, films, movies and other information is displayed through the medium of television sets or cameras." '334 Patent col. 1 ll. 13-24.  ContextMedia further admits that the '334 Patent states, "[t]he present invention relates to a method for the dynamic coordination and control of television sets or cameras, with possible peripheral equipment, in a digital information system for displaying information on at least one display device via at least one television set or camera for each display device, wherein the information is displayed in places that are accessible to and frequented by the general public." '334 Patent col. 5 ll. 20-25.  ContextMedia admits that the '334 Patent purports to disclose an invention that "aims to provide a flexible system in which external information mediators are able to dynamically control in real time the transmission of display instructions to a larger public in different places situated at any chosen distance apart through television sets or cameras which project information onto displays intended herefor" and "enable[s] a picture, image or other information to be changed in practice as often as is desired, in real time, therewith providing direct and immediate communication, and to enable similar or specific information to be displayed in places that are mutually far apart and to enable message information to be alternated with advertising spots, for instance." '334 Patent col. 2 ll. 56-61; col. 3 ll. 5-11.  Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 17 of the Amended Complaint.

18.    A system operating according to an embodiment of the '334 Patent can include a control center with a communication interface that connects devices to create and update a display list in real time using control instruction fields sent from external mediators and to transmit and display the desired images to one or more electronic displays that can be controlled

independently of other electronic displays. (*Id.* at 3:38-60; 5:29-30.) In embodiments, the control center can include one or more servers, workstations, and databases stored on one or more physical storage devices, and can include redundancy, of both computer hardware and the information stored, where the devices can be connected using a network, such as a LAN (Local Area Network) or by using a cable-carried ISDN solution (Integrated Services Digital Network) or other fixed lines that have a similar capacity. (*Id.* at 6:17-45; 7:17-29; 11:60-67.) In some embodiments, a relational database can be used to store image and video data and each electronic display can be assigned a unique TCP/IP (Transmission Control Protocol / Internet Protocol) address such that each display can be individually addressed and sent content for display. (*Id.* at 14:50-15:8.)

**ANSWER**:

ContextMedia admits that the '334 Patent states that "[i]nformation mediators are, in one embodiment of the present invention, connected to a computerized control center via interfaces for data and telecommunication for round-the clock transmission of information. The control center has communication interfaces against computerized devices, situated at specific places remote from the control center, for coordinating and controlling television sets or cameras. A control center is able to create and update an exposure list in real time with control instruction fields via dynamic booking of information in time for exposure from mediators having drive routine means. Said drive routine means may be transparent for transmission of information with the drive routine means of the control center for transmission of information in the system via interfaces. The exposure list with control instructions coordinates and controls the television set or camera with regard to what shall be exposed, when it shall be exposed, where it shall be exposed and for how long it shall be exposed. Also it enables each television set or camera to be controlled, independently of other television sets or cameras, to receive the same or different information in accordance with the exposure list for exposure of respective television set or camera through the computerized devices." '334 Patent col. 3 ll. 38-60. ContextMedia further admits that the '334 Patent states that "the television set or camera itself can comprise a digital

12

display device or be incorporated in a digital display device such as an LCD display, PDP display (Plasma Display Panel), a digital television set etc." '334 Patent col. 5 ll. 29-32.

ContextMedia further admits that the '334 Patent states that in certain embodiments "[t]he central computer 28 in the control center 12 also includes databases 30, in the illustrated case two databases. The databases 30 may be externally connected to the central computer. The control center also includes working stations 32, which are preferably connected to the central computer 28 via a Local Area Network (LAN) in accordance with known techniques." '334 Patent col. 6 ll. 17-23. ContextMedia further admits that the '334 Patent states that "the control center 12 has a communication interface 14 against the computerized devices 16, 18, 20 situated on shifting positions or places for television set or camera coordination and control. The drawing shows specifically a radio link which forms an interface between the control center 12 and the computerized devices 16, 18, 20, this interface being a preferred interface, although not necessarily the sole possible interface. Other interfaces for transmitting information between the control center 12 and the computerized devices 16, 18, 20 may consist of a cable-carried ISDN solution (Integrated Services Digital Network), satellite network, other wireless network, or other fixed lines that have the same capacity." '334 Patent col. 7 ll. 17-29. ContextMedia further admits that the '334 Patent states that "[e]ach server 1, 2, 3 will preferably have its own array of databases 30, for instance external hard disks with sufficient storage capacity. All material is copied therebetween. This will result in redundancy, since each exposure or picture will occur in at least three copies. Copying between the databases 30, 36 can be effected automatically, with each newly arrived or changed file containing information being copied in the remaining databases." '334 Patent col. 11 ll. 60-67.

ContextMedia further admits that the '334 Patent states that "[i]n yet another embodiment of the present invention, the central computer 28 comprises a relation database and/or, for example, a video server of the type Oracle® which is able to optimally manage pictures and films. The central computer 28 is connected 14 to network computers 34, 38 which control each one television set or camera 22. Every television set or camera 22 or network computer 34, 38 has a TCP/IP address Transmission Control Protocol/Internet Protocol) [sic] and are able to be addressed by the central computer 28 and vice versa. TCP/IP is a transmission and Internet protocol which de facto is a network standard. It is commonly used in connection with X25 and Ethernet® connections and is regarded as one of few protocols which provide a true connection to OSI (Open Systems Interconnection). The TCP/IP address allows addressing of unique output data such as pictures to every television set or camera 22, respectively. With the existing Oracle® relation database the comprised accounting or statistic software for invoicing of purchased advertising time can be used. A relation database is a type of database system where all the data is stored together with indications of specific connections (relations) between stored information which simplifies searching, printing, sorting etc. in the database 30 or outputs from it." '334 Patent col. 14 ll. 50-67, col. 15 ll. 1-8. ContextMedia is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 18 of the Amended Complaint, and, accordingly, denies the allegations.

19. In one embodiment of the invention, personnel operating a work station can enter information to be displayed from an external mediator via projector control instructions in the exposure list created by the server. (*Id.* at 9:45-61.) Operators are able to interrupt a queue in the server in order to update the exposure list with information generated centrally from the control center or with information from an external information mediator. (*Id.*)

**ANSWER**:

ContextMedia admits that the '334 Patent states that "[i]n one embodiment of the invention, there is thus included an alternative to the dynamic updating of the exposure list as mentioned in the aforegoing, i.e. the external information mediators 24 which do not have access to software in the exposure handler are provided with the possibility of having their picture material or exposure material processed by personnel serving the working stations 32, wherein said personnel enter, via the working stations 32, the information that the external mediator 24 wishes to have exposed, or displayed, via television set or camera control instructions in the exposure handler and via the exposure list created by the handler. Personnel at the working stations 32 are thus able to interrupt any queue lists in the server 1 to update the exposure list, via the exposure handler, with information generated centrally from the control center 12 or with information that is insufficiently processed when received by the server 1 from the external information mediator 24." '334 Patent col. 9 ll. 45-61. ContextMedia is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 19 of the Amended Complaint, and, accordingly, denies the allegations.

20. Information mediators can use an exposure program to deliver complete images (*e.g.* an image, a series of images or a video clip) for display which would not require processing by the control center. (*Id.* at 12:12-22.) These can be dynamically added to the exposure list by the exposure handler. (*Id.*) External information mediators can thus deliver a complete image for display (an image, a series of images or a video clip) which can be processed automatically and inserted into the exposure list, or an administrator can select information from an external mediator and process the information so that it can be inserted into the exposure list via the exposure handler. (*Id.* at 9:62-10:9.)

**ANSWER**:

ContextMedia admits that the '334 Patent states that "[a] number of working machines or working stations 32 are connected to the central computer 28 for controlling, communicating and processing of exposure or picture material, generating exposure lists through the exposure handler when required, and so on. Alternatively, the information mediators 24 may have their

own versions of the exposure program used, thereby enabling the mediators to deliver finished picture sequences/films transparently. These picture sequences/films need not then be prepared in the control center 12, but can be filed dynamically in the exposure list by the exposure handler." '334 Patent col. 12 ll. 12-22. ContextMedia further admits that the '334 Patent states that "[i]n accordance with the aforegoing, external information mediators 24 that have access to the exposure program are able to deliver complete picture series/films which can be processed automatically and inserted into the exposure list, or optionally personnel administering the working stations 32 are able to pick external mediator information from the queues, or lines, and process this information so that it can be inserted into the exposure list via the exposure handler 3." '334 Patent col. 9 ll. 62-67, col. 10 ll. 1-2. ContextMedia is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 20 of the Amended Complaint, and, accordingly, denies the allegations.

**The '603 Patent**

21. On August 6, 2002, U.S. Patent Number 6,430,603, entitled "System for Direct Placement of Commercial Advertising, Public Service Announcements and Other Content on Electronic Billboard Displays" was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '603 Patent is attached as Exhibit C to this Amended Complaint.

**ANSWER**:

ContextMedia admits that on its face, U.S. Patent Number 6,430,603 is entitled "System for Direct Placement of Commercial Advertising, Public Service Announcements and Other Content on Electronic Billboard Displays," and indicates that it was issued by the United States Patent and Trademark Office on August 6, 2002. ContextMedia admits that Exhibit C attached to the Amended Complaint purports to be a copy of the '603 Patent. ContextMedia denies the allegations in paragraph 21 insofar as they allege that the '603 Patent was duly and legally

issued. ContextMedia is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 21 of the Amended Complaint, and, accordingly, denies the allegations.

22. The innovations described by the '603 Patent "relate[] to systems permitting advertisers to target geographical regions and demographic groups with ever changing, current advertising content without incurring the high fixed cost of traditional single-message billboards." ('603 Patent at 1:7-10.)

**ANSWER**:

ContextMedia denies the allegation that the '603 Patent discloses "innovations" or discloses or claims patentable inventions. ContextMedia admits that the '603 Patent purports to disclose an invention that "relates to systems permitting advertisers to target geographical regions and demographic groups with ever changing, current advertising content without incurring the high fixed cost of traditional single-message billboards." '603 Patent col. 1 ll. 7-10. Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 22 of the Amended Complaint.

23. A typical system can include a network that connects a central information processing center with a number of electronic displays. (*Id.* at 2:7; 2:54-56.) "The means for transmitting content information" from the central information processing center "to the display locations may take a number of forms." (*Id.* at 3:31-32.) "[T]he means include: [a] High speed cable [b] Satellite [c] Dedicated phone [d] High speed line (e.g., ISDN) [e] Cellular or PCS [f] Internet [g] Radio/radio pulse transmission [h] High speed optical fiber." (*Id.* at 3:35-45.) "[A]ny form" of network "may be utilized" depending on the system requirements "at various locations within the network," which can include combinations of the examples listed. (*Id.* at 3:32-33.)

**ANSWER**:

ContextMedia admits that the '603 Patent states that "the system of the invention includes a central information processing center that permits customers to review a schedule of times and electronic display locations that are available for placement of advertisements, and also permits customers to purchase available times at selected electronic display locations for

placement of their advertising content." '603 Patent col. 2 ll. 6-12. ContextMedia further admits that the '603 Patent states that "[s]ystem 20 includes a network comprising a plurality of electronic displays 30 that are located in high traffic areas in various geographic locations." '603 Patent col. 2 ll. 54-56. ContextMedia admits that the '603 Patent states that "[t]he means for transmitting content information to the display locations may take a number of forms, with it being understood that any form, or combination thereof, may be utilized at various locations within the network. As shown in FIG. 1, the means include: a. High speed cable b. Satellite c. Dedicated phone d. High speed line (e.g., ISDN) e. Cellular or PCS f. Internet g. Radio/radio pulse transmission h. High speed optical fiber." '603 Patent col. 3 ll. 31-45. ContextMedia is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 23 of the Amended Complaint, and, accordingly, denies the allegations.

24.     Plaintiff T-Rex Property AB is the assignee and owner of the right, title and interest in and to the '470 Patent, the '334 Patent, and the '603 Patent (collectively, the "Patents-In-Suit"), including the right to assert all causes of action arising under the Patents-In-Suit and the right to any remedies for infringement.

**ANSWER**:

ContextMedia is without sufficient information or knowledge to form a belief as to the truth of the allegations set forth in paragraph 24 of the Amended Complaint, and, accordingly, denies the allegations.

### BACKGROUND ON THE PRIOR ART AND THE '470 PATENT

25.     In 1994, the traditional Out-of-Home advertising industry was in need of a change, an evolutionary improvement. See Declaration of Mats Hylin ("Hylin Decl.") at ¶ 8 (attached as Exhibit D, and hereby incorporated, in its entirety, by reference herein at paragraph 17). Mats Hylin, the first named inventor of the '470 Patent, recognized that the "demands from advertisers" were not being met; what advertisers wanted was "more flexibility and speed" and "the possibility of changing the message" instead of "having the same advertisement [displayed] during the whole period." *Id.* This may be because advertisers wish to avoid a stagnant message,

or because advertisers desire campaign evaluation feedback —"the results of a first campaign are fundamental in order to create the next campaign." *Id.* at ¶ 15. In addition to addressing these revenue issues, distribution efficiencies were "one of the most important areas to create higher margins." *Id.* at ¶ 6. One method to address this was through the use of digital advertising copy—which could be distributed via "the internet, or any other network"—rather than incur the costs associated with physical distribution and display of paper or other printed advertising copy. *Id.* at ¶¶ 8-9.

**ANSWER**:

ContextMedia admits that Exhibit D attached to the Amended Complaint purports to be a declaration of Mats Hylin, the first inventor listed on the face of the '470 Patent. ContextMedia is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 25 of the Amended Complaint, and, accordingly, denies the allegations.

26.    With respect to the '470 Patent and claim 25 in particular, claim 25 "solves specific needs and problems over other technologies that existed in 1996." Declaration of Zaydoon Jawadi ("Jawadi Decl.") ¶ 22 (attached as Exhibit E, and hereby incorporated, in its entirety, by reference herein at paragraph 18). Such problems and shortcomings included "controlling and coordinating digital signage displays in concrete, specific ways beyond merely scheduling content to be displayed on remote screens." *Id.* "Prior to the inventions disclosed in claim 25 . . . there was no flexible way for external information mediators . . . to dynamically control and coordinate, display devices located in different places." *Id.* at ¶ 23. "Content from external information mediators could not be directly displayed; instead, displaying such content required administrative processing and manual intervention to update the display systems." *Id.*

**ANSWER**:

ContextMedia admits that Exhibit E attached to the Amended Complaint purports to be a declaration of Zaydoon Jawadi. ContextMedia denies all other allegations set forth in paragraph 26 of the Amended Complaint.

27.    The inventions embodied in claim 25 "improved the operation of digital signage that existed in 1996" by "impos[ing] meaningful limitations" that "allow[ed] external information mediator(s) to dynamically control and coordinate display devices located in different places, extending the usefulness of the digital signage technology." *Id.* at ¶¶ 26-27. "[C]laim 25 of the '470 Patent incorporates unique, innovative, non-conventional, non-generic elements" that work together to improve the operation of a digital signage system. *Id.* at ¶ 28. "The functions, application, and implementations of these elements inherently and necessarily

are rooted in and require computer technology, communication technology, and digital display technology in order to overcome specific problems arising in the realm of digital signage in 1996." *Id.* at ¶ 29. Importantly, "the claim goes beyond the mere concept of simply using a computer to perform distributed signage." *Id.* "This is because computers, communication interfaces, and digital display devices are not ancillary or incidental additions but germane and integral parts of the inventions disclosed by claim 25 of the '470 Patent." *Id.* The limitations of claim 25 "relate to the functioning of hardware and software" that are "inextricably tied to digital signage computer technology, communication technology, and digital display technology" such that the "unique, innovative, non-conventional, non-generic" hardware and software incorporated in claim 25 are used to achieve these technological innovations. *Id.* at ¶¶ 28, 30.

**ANSWER**:

      ContextMedia denies the allegations in paragraph 27 of the Amended Complaint.

      28.    The physical combination of elements that are referenced in claim 25 represent an innovation over the prior art. More particularly, claim 25 references an "information mediator." At the time of the invention, in about the 1995 to 1996 time frame, the term "information mediator," within the context of the field of art, could have referred to "an agent between producer and consumer of information" where the "agent could be a software component, software with accompanying hardware, a system, an organization (such as advertising agency) or an individual." *Id.* at ¶ 33. Claim 25 also references "location(s)" which at the time of the invention could have referred, again within the context of the field of art, to "a particular physical or geographical place or position where the message or advertisement is displayed on an electronic display device." *Id.* at ¶ 34. Taking into account the meaning of these terms, as well as the claim as a whole, implementation of claim 25 would require "industrial computers, servers, PCs, networking routers or switches, networking cables, computer graphics capabilities, display devices . . . database management systems as well as specialized software drivers to interface between mediators and system computers, to decipher control lists, to create and update exposure lists, and to decipher and act upon exposure lists." *Id.* at ¶ 35. Such a combination of elements represented a significant and non-conventional innovation over the prior art which resulted in an improvement in the operation of digital signage. *Id.* at ¶ 38.

**ANSWER**:

      ContextMedia admits that claim 25 of the '470 Patent contains the words "information

mediator" and "locations." ContextMedia denies all other allegations set forth in paragraph 28

of the Amended Complaint.

      29.    "Furthermore, claim 25 . . . is distinct and different from the other claims of the '470 Patent." *Id.* at ¶ 37. "In particular, claim 25 . . . is distinct and different from claim 26 of the '470 Patent." *Id.* For example, "[c]laim 26 discloses a computerized control center, communication interfaces, means for generating and dynamically updating an exposure list, a

means for displaying images and a computerized device situated at each location—limitations that claim 25 does not disclose." *Id.*

**ANSWER**:

ContextMedia admits that Exhibit E of the Amended Complaint states that "[f]urthermore, claim 25 of the '470 Patent is distinct and different from the other claims of the '470 Patent. In particular, claim 25 of the '470 Patent is distinct and different from claim 26 of the '470 Patent. As a starting point, claim 25 discloses a method, whereas claim 26 discloses a system, which includes the specified components. Claim 26 discloses a computerized control center, communication interfaces, means for generating and dynamically updating an exposure list, a means for displaying images and a computerized device situated at each location— limitations that claim 25 does not disclose." *See* Jawadi Decl. ¶ 37. ContextMedia denies all other allegations set forth in paragraph 29 of the Amended Complaint.

30.     Claim 25 embodies an entirely new combination of special purpose and interconnected physical equipment to present information publicly. The inventions embodied in claim 25 arose in a specialized context—back in or about the 1995 to 1996 time frame—and the inventors came up with a specific solution, manifested in a concrete combination of devices, interfaces, and software, networked together with physical displays viewable by the target audience, to resolve particular problems.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 30 of the Amended Complaint.

31.     With respect to claim 26 of the '470 Patent, the inventions embodied in claim 26 "improved the operation of digital signage that existed in 1996" *Id.* at ¶ 45. "[C]laim 26 of the '470 Patent incorporates unique, innovative, non-conventional, non-generic elements." *Id.* at ¶ 47. These elements include a "computerized control center[,] . . . means (within the computerized control center) for generating and dynamically updating an exposure list . . . [and] computerized devices" which are situated at "a plurality of locations." *Id.* at ¶¶ 40, 47. The computerized devices are "electronically coupled to the computerized control center" and include a means "for displaying images in accordance with the exposure list." *Id.* at ¶ 47. The limitations of claim 26 "relate to both the hardware and software technology for digital signage, as well as to the functioning of hardware and software technology for digital signage" and are

"manifested in a concrete combination of devices, interfaces, and software, networked together with physical displays viewable by the target audience." *Id.* at ¶¶ 41, 49.

**ANSWER**:

ContextMedia admits that claim 26 of the '470 Patent contains the words "computerized control center," "communication interfaces," "said computerized control center including means for generating and dynamically updating an exposure list," "a computerized device situated at each one of said plurality of locations, each computerized device being electronically coupled to said computerized control center," and "a means for displaying images in accordance with said exposure list." ContextMedia denies all other allegations set forth in paragraph 31 of the Amended Complaint.

32.     The physical combination of elements that are referenced in claim 26 represent an innovation over the prior art. More particularly, in addition to "information mediator" and "location(s)," claim 26 references "communication interfaces." At the time of the invention, in about the 1995 to 1996 time frame, the term communication interfaces, within the context of the field of art, could have referred to "electronic hardware, software, and protocols allowing systems (such as computers) to communicate and exchange data." *Id.* at ¶ 54. Claim 26 also references a "computerized control center" which at the time of the invention could have referred, again within the context of the field of art, to "a computer or set of computers that control and coordinate the interaction between networked computers or equipment." *Id.* at ¶ 55. Such a combination of elements represented a significant and non-conventional innovation over the prior art which resulted in an improvement in the operation of digital signage. *Id.* at ¶ 59.

**ANSWER**:

ContextMedia admits that claim 26 of the '470 Patent contains the words "information mediator," "locations," "communication interfaces," and "a computerized control center." ContextMedia denies all other allegations set forth in paragraph 32 of the Amended Complaint.

33.     Claim 26 embodies an entirely new combination of special purpose and interconnected physical equipment to present information publicly. The inventions embodied in claim 26 arose in a specialized context—back in or about the 1995 to 1996 time frame—and the inventors came up with a specific solution, manifested in a concrete combination of devices, interfaces, and software, networked together with physical displays viewable by the target audience, to resolve particular problems in digital technology.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 33 of the Amended Complaint.

## BACKGROUND ON THE '334 PATENT

34.     Claim 22 the '334 Patent "solves specific needs and problems over other technologies that existed in 1996." Jawadi Decl. at ¶ 63. Such problems and shortcomings included "controlling and coordinating digital signage displays in concrete, specific ways beyond merely scheduling content to be displayed on remote screens." *Id.* More specifically, "[p]rior to the inventions disclosed in claim 22 . . . there was no flexible way for external information mediators . . . to dynamically control and coordinate, in real time, display devices located in different places." *Id.* at ¶ 64. "Content from external information mediators could not be directly displayed, and particularly not in real time or in near real time; instead, displaying such content required administrative processing and manual intervention to update the display systems." *Id.*

**ANSWER**:

ContextMedia denies the allegations in paragraph 34 of the Amended Complaint.

35.     The inventions embodied in claim 22 "improved the operation of digital signage that existed in 1996" by "impos[ing] meaningful limitations" that "allow[ed] external information mediator(s) to dynamically control and coordinate, in real time, display devices located in different places, extending the usefulness of the digital signage technology." *Id.* at ¶¶ 67-68. "[C]laim 22 of the '334 Patent incorporates unique, innovative, non-conventional, nongeneric elements" that work together to improve the operation of a digital signage system. *Id.* at ¶ 69. "The functions, application, and implementations of these elements inherently and necessarily are rooted in and require computer technology, communication technology, and digital display technology in order to overcome specific problems arising in the realm of digital signage in 1996." *Id.* at ¶ 70. Importantly, "the claim goes beyond the mere concept of simply using a computer to perform distributed signage." *Id.* "This is because computers, communication interfaces, and digital display devices are not ancillary or incidental additions but germane and integral parts of the inventions disclosed by claim 22 of the '334 Patent." *Id.* The limitations of claim 22 "relate to the functioning of hardware and software" that are "inextricably tied to digital signage computer technology, communication technology, and digital display technology" such that the "unique, innovative, non-conventional, non-generic" hardware and software incorporated in claim 22 are used to achieve these technological innovations. *Id.* at ¶¶ 69, 71.

**ANSWER**:

ContextMedia denies the allegations in paragraph 35 of the Amended Complaint.

36.     The physical combination of elements that are referenced in claim 22 represent an innovation over the prior art. Taking into account the meaning of these elements, as well as the claim as a whole, implementation of claim 22 would require "industrial computers, servers, PCs, networking routers or switches, networking cables, computer graphics capabilities, display devices . . . database management systems as well as specialized software drivers to interface between mediators and system computers, to decipher control lists, to create and update exposure lists, and to decipher and act upon exposure lists." *Id.* at 74. Such a combination of elements represented a significant and non-conventional innovation over the prior art which resulted in an improvement in the operation of digital signage. *Id.* at ¶ 77.

**ANSWER**:

ContextMedia denies the allegations in paragraph 36 of the Amended Complaint.

37.     "Furthermore, claim 22 of the '334 Patent is distinct and different from the other claims of the '334 Patent as well as being distinct and different from the claims of the '470 Patent." *Id.* at ¶ 76. "In particular, claim 22 . . . is distinct and different from claim 32 of the '334 Patent. *Id.* For example, "[c]laim 32 discloses computerized control center means (hardware and/or software . . .), communication interfaces (of the control center), computerized means (hardware and/or software . . . ) . . . and exposure handler means (hardware and/or software . . . )—limitations that claim 22 does not disclose." *Id.*

**ANSWER**:

ContextMedia admits that Exhibit E of the Amended Complaint states that "[f]urthermore, claim 22 of the '334 Patent is distinct and different from the other claims of the '334 Patent as well as being distinct and different from the claims of the '470 Patent. In particular, claim 22 of the '334 Patent is distinct and different from claim 32 of the '334 Patent. As a starting point, claim 32 discloses an arrangement of apparatuses, whereas claim 22 discloses a method. Claim 32 discloses computerized control center means (hardware and/or software structure performing functions), communication interfaces (of the control center), computerized means (hardware and/or software structure performing functions) for coordinating and controlling electronic displays, and exposure handler means (hardware and/or software structure performing functions)—limitations that claim 22 does not disclose." *See* Jawadi Decl. ¶ 76. ContextMedia denies all other allegations set forth in paragraph 37 of the Amended Complaint.

38.    Claim 22 embodies an entirely new combination of special purpose and interconnected physical equipment to present information publicly. The inventions embodied in claim 22 arose in a specialized context—back in or about the 1995 to 1996 time frame—and the inventors came up with a specific solution, manifested in a concrete combination of devices, interfaces, and software, networked together with physical displays viewable by the target audience, to resolve particular problems.

**ANSWER**:

ContextMedia denies the allegations in paragraph 38 of the Amended Complaint.

39.    The inventions embodied in claim 32 also "improved the operation of digital signage that existed in 1996" *Id.* at ¶ 84. "[C]laim 32 of the '334 Patent incorporates unique, innovative, non-conventional, non-generic elements." *Id.* at ¶ 86. These inventions include "a computerized control center means," "computerized means . . . for coordinating and controlling electronic displays" and "exposure handler means . . . for creating and updating an exposure list." *Id.* The limitations of claim 32 "relate to both the hardware and software technology for digital signage, as well as to the functioning of hardware and software technology for digital signage." *Id.* at ¶ 88.

**ANSWER**:

ContextMedia admits that claim 32 of the '334 Patent contains the words "computerized

control center means," "computerized means for coordinating and controlling electronic

displays," and "exposure handler means whereby the control center functions, in real time and

through the medium of said exposure handler, to create and update an exposure list."

ContextMedia denies all other allegations set forth in paragraph 39 of the Amended Complaint.

40.    The physical combination of elements that are referenced in claim 32 represent an innovation over the prior art. Taking into account the meaning of these elements, as well as the claim as a whole, the arrangement of claim 32 would require "industrial computers, servers, PCs, networking routers or switches, networking cables, computer graphics capabilities, display devices . . . database management systems as well as specialized software drivers to interface between mediators and system computers, to decipher control lists, to create and update exposure lists, and to decipher and act upon exposure lists." *Id.* at 93. "Due to the application of outdoor advertising, additional specialized equipment, such as special duty and/or ruggedized computers (which could include ruggedized media players, for example) could be necessary." *Id.* Such a combination of elements represented a significant and non-conventional innovation over the prior art which resulted in an improvement in the operation of digital signage. *Id.* at ¶ 96.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 40 of the Amended Complaint.

41.     "Furthermore, claim 32 of the '334 Patent . . . is distinct and different from the claims of the '470 Patent." *Id.* at ¶ 95.

**ANSWER**:

ContextMedia admits that Exhibit E of the Amended Complaint states that "[f]urthermore, claim 32 of the '334 Patent is distinct and different from the other claims of the '334 Patent, and it is distinct and different from the claims of the '470 Patent. In particular, claim 32 of the '334 Patent is distinct and different from claim 22 of the '334 Patent. As a starting point, claim 32 discloses an arrangement of apparatuses, whereas claim 22 discloses a method. Claim 32 discloses computerized control center means (hardware and/or software structure performing functions), communication interfaces (of the control center), computerized means (hardware and/or software structure performing functions) for coordinating and controlling electronic displays, and exposure handler means (hardware and/or software structure performing functions)—limitations that claim 22 does not disclose." *See* Jawadi Decl. ¶ 95. ContextMedia denies all other allegations set forth in paragraph 41 of the Amended Complaint.

## BACKGROUND ON THE '603 PATENT

42.     Claim 42 the '603 Patent "solves specific needs and problems that existed in 1999." Jawadi Decl. ¶ 101. Such problems and shortcomings included "targeting geographical regions and demographic groups with ever changing, current advertising content in concrete, specific ways beyond merely scheduling content to be displayed on remote screens." *Id.* More specifically, "the inventions disclosed in claim 42" allowed "content providers . . . to directly access a network of electronic displays located in various geographic locations and to directly send their own content—which could be formatted for the use of a split screen display—to the network to be displayed at locations and times selected by the providers." *Id.* at ¶ 102.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 42 of the Amended Complaint.

43. "Claim 42 incorporates non-conventional, non-generic hardware and software that imposes meaningful limitations to improve on the existing 1999 era digital signage technology." *Id.* "The functions, application, and implementations of these elements inherently and necessarily are rooted in and require computer technology, communication technology, and digital display technology in order to achieve specific solutions in the realm of digital signage." *Id.* at ¶ 104. Importantly, "the claim goes beyond the mere concept of simply using a computer to perform distributed signage." *Id.* "This because computers, communication interfaces, and digital display devices are not ancillary or incidental additions but germane and integral parts of the inventions disclosed by claim 42 of the '603 Patent. *Id.* The limitations of claim 42 "relate to both the hardware and software technology for digital signage, as well as to the functioning of hardware and software technology for digital signage" that are "inextricably tied to digital signage computer technology, communication technology, and digital display technology" such that the "unique, innovative, non-conventional, non-generic" hardware and software incorporated in claim 42 are used to achieve these technological innovations. *Id.* at ¶¶ 103, 105.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 43 of the Amended Complaint.

44. "Furthermore, claim 42 of the '603 Patent is distinct and different from the claims of the '334 Patent and it is distinct and different from the claims of the '470 Patent. *Id.* at ¶ 108.

**ANSWER**:

ContextMedia admits that Exhibit E of the Amended Complaint states that "[f]urthermore, claim 42 of the '603 Patent is distinct and different from the claims of the '334 Patent, and it is distinct and different from the claims of the '470 Patent." *See* Jawadi Decl. ¶ 108. ContextMedia denies all other allegations set forth in paragraph 44 of the Amended Complaint.

45. Claim 42 embodies a new combination of special purpose and interconnected physical equipment to present information publicly. The inventions embodied in claim 42 arose in a specialized context—in or about the 1998 to 1999 time frame—and the inventors came up with a specific solution, manifested in a concrete combination of devices, interfaces, and software, networked together with physical displays viewable by the target audience, to resolve particular problems.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 45 of the Amended Complaint.

46. The inventions embodied in claim 42 "improve upon existing digital signage." *Id.* at ¶ 110. Claim 42 includes a "combination of interconnected hardware and software elements that are incorporated within the limitations of claim 42—and that claim 42 as a whole—improves upon existing digital signage hardware." *Id.*

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 46 of the Amended Complaint.

## COUNT I – INFRINGEMENT OF U.S. Patent No. RE39,470

47. The allegations set forth in the foregoing paragraphs 1 through 46 are hereby realleged and incorporated herein by reference.

**ANSWER**:

ContextMedia incorporates by reference its responses to the preceding allegations of paragraphs 1 through 46 above as though stated herein.

48. Upon information and belief, in violation of 35 U.S.C. § 271(a), Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '470 Patent by making, using, offering for sale, selling, or importing devices or systems, in this judicial district and elsewhere in the United States (directly or through intermediaries), that perform the steps of receiving control instructions from at least one external information mediator, using the control instructions to generate an exposure list that specifies three or more of the following items: i) what information content is to be displayed; ii) at which of a plurality of locations the information content is to be displayed; iii) when the information content is to be displayed for each location at which content is to be displayed; and iv) how long the information content is to be displayed for each location at which content is to be displayed, displaying images at one or more of the locations in accordance with the exposure list, and permitting the exposure list to be dynamically updated as claimed in at least claim 25 of the '470 Patent, without the authority of Plaintiff T-Rex Property AB.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 48 of the Amended Complaint.

49.     More specifically, the infringing devices and systems include Defendants' digital advertising and services platform, including Defendants' "Digital Waiting Room Screen" product, which delivers, *inter alia,* "condition-specific content to patients while they wait" in the "waiting rooms of physician practices across all 50 states." *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen "is placed in the waiting rooms of physician practices across all 50 states" and is intended to "deliver[] condition-specific content to patients while they wait."   Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 49 of the Amended Complaint.

50.     Defendants' digital advertising and services platform receives control instructions from at least one external information mediator. For example, upon information and belief, Defendants' digital advertising and services platform receives control instructions from medical content providers, including without limitation "patient education producers and health organizations" and advertisers. *See, e.g.,* http://www.contextmediahealth.com/faq/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 50 of the Amended Complaint.

51.     The control instructions received by Defendants' digital advertising and services platform are used to generate an exposure list, with said exposure list specifying three or more of the following items: i) what information content is to be displayed; ii) at which of the plurality of locations the information content is to be displayed; iii) when the information content is to be displayed for each location at which content is to be displayed; and iv) how long the information content is to be displayed for each location at which content is to be displayed. For example, upon information and belief, Defendants deliver, via its content providers, "condition-specific content to patients" and use "smart playlist technology [to curate] programming that is customized to each office according to its specific patient population" *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen is intended to "deliver[] condition-specific content to patients."   ContextMedia admits that "[u]sing smart playlist

technology, ContextMedia curates programming that is customized to each office according to its specific patient population." Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 51 of the Amended Complaint.

52. Defendants' digital advertising and services platform displays images at one or more of said locations in accordance with the exposure list. For example, Defendants' "Digital Waiting Room Screen is placed in the waiting rooms of physician practices across all 50 states, and delivers "condition-specific content to patients while they wait" *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen "is placed in the waiting rooms of physician practices across all 50 states" and is intended to "deliver[] condition-specific content to patients while they wait." Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 52 of the Amended Complaint.

53. Defendants' digital advertising and services platform permits the exposure list to be dynamically updated. For example, "[c]ontent [is] refreshed daily and sent to screens based on patient demographic data." *See, e.g.,* http://partner.contextmediahealth.com/assets/pdfs/digital_waiting_room_sales_sheet.pdf (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that, with respect to the Digital Waiting Room Screen, content may be "refreshed daily and sent to screens based on patient demographic data." Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 53 of the Amended Complaint.

54. Upon information and belief, in violation of 35 U.S.C. § 271(a), Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '470 Patent by making, using, offering for sale, selling, or importing devices or systems, in this judicial district and elsewhere in the United States (directly or through intermediaries), that comprise a computerized control center that has a plurality of communication interfaces for receiving control instructions from at least one external information mediator, the computerized control center includes a means for generating and dynamically updating an exposure list from the control instructions, the exposure list specifying

three or more of the following items: i) what information content is to be displayed; ii) at which of the plurality of locations the information content is to be displayed; iii) when the information content is to be displayed for each location at which content is to be displayed; and iv) how long the information content is to be displayed for each location at which content is to be displayed, a computerized device situated at each one of the plurality of locations and electronically coupled to the computerized control center, and a means for displaying images in accordance with the exposure list associated with each one of the computerized devices as claimed in at least claim 26 of the '470 Patent, without the authority of Plaintiff T-Rex Property AB.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 54 of the Amended

Complaint.

55.     More specifically, the infringing devices and systems include Defendants' digital advertising and services platform, including the Defendants' "Digital Waiting Room Screen" product, which delivers, *inter alia,* "condition-specific content to patients while they wait" in the "waiting rooms of physician practices across all 50 states." *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen "is placed in the waiting

rooms of physician practices across all 50 states" and is intended to "deliver[] condition-specific

content to patients while they wait."  Except as expressly admitted, ContextMedia denies all

other allegations set forth in paragraph 55 of the Amended Complaint.

56.     Defendants' digital advertising and services platform comprises a computerized control center that has a plurality of communication interfaces for receiving control instructions from at least one external information mediator, the computerized control center includes a means for generating and dynamically updating an exposure list from the control instructions, the exposure list specifying three or more of the following items: i) what information content is to be displayed; ii) at which of the plurality of locations the information content is to be displayed; iii) when the information content is to be displayed for each location at which content is to be displayed; and iv) how long the information content is to be displayed for each location at which content is to be displayed. For example, upon information and belief, Defendants' digital advertising and services platform comprises a computerized control center that includes Internet connectivity. Defendants' computerized control center, upon information and belief, receives control instructions from medical content providers, including "patient education producers and health organizations" and advertisers. *See, e.g.,* http://www.contextmediahealth.com/faq/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 56 of the Amended

Complaint.

57.  Defendants' digital advertising and services platform comprises a computerized device that is situated at each location and each computerized device is electronically coupled to the computerized control center. For example, upon information and belief, in Defendants' digital advertising and services platform the "[p]rogramming is delivered via Internet directly to the mini-PC mounted to the back of the TV." *See, e.g.,* http://www.contextmediahealth.com/faq/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that, with respect to the Digital Waiting Room Screen,

"[p]rogramming is delivered via Internet directly to the mini-PC mounted to the back of the TV."

Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 57

of the Amended Complaint.

58.  Defendants' digital advertising and services platform comprises a means for displaying images in accordance with the exposure list that is associated with each of the computerized devices. For example, upon information and belief, Defendants' digital advertising and services platform comprises a mini-PC, which is mounted to the back of a TV, which sends the received programming to the TV, such that the TV can visually display the content.

**ANSWER**:

ContextMedia admits that, with respect to the Digital Waiting Room Screen,

"[p]rogramming is delivered via Internet directly to the mini-PC mounted to the back of the TV,"

the mini-PC sends the received programming to the TV, and the TV can visually display the

content.  Except as expressly admitted, ContextMedia denies all other allegations set forth in

paragraph 58 of the Amended Complaint.

59.  Upon information and belief, Defendants have directly infringed and continue to directly infringe one or more claims of the '470 Patent, including at least claims 25 and 26, by operating their digital network in Illinois and elsewhere in the United States.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 59 of the Amended Complaint.

60.     Defendants have had knowledge of the '470 Patent since at least the date that the Complaint was served.

**ANSWER**:

ContextMedia admits that it has had knowledge of the '470 Patent since the date that the Complaint was served.  Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 60 of the Amended Complaint.

61.     Because of Defendants' infringing activities, Plaintiff T-Rex Property AB has suffered damages and will continue to suffer damages in the future. T-Rex Property AB is entitled to recover from Defendants the damages sustained by T-Rex Property AB as a result of Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 61 of the Amended Complaint.

## COUNT II – INFRINGEMENT OF U.S. Patent No. 7,382,334

62.     The allegations set forth in the foregoing paragraphs 1 through 53 are hereby realleged and incorporated herein by reference.

**ANSWER**:

ContextMedia incorporates by reference its responses to the preceding allegations of paragraphs 1 through 61 above as though stated herein.

63.     Upon information and belief, in violation of 35 U.S.C. § 271(a), Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '334 Patent by making, using, offering for sale, selling, or importing devices or systems, in this judicial district and elsewhere in the United States (directly or through intermediaries), that perform the steps of generating an exposure list comprising control instructions for coordinating and controlling electronic displays with regard to what shall be exposed, when it shall be exposed, where it shall be exposed and for how long it shall be

exposed, using a control center for coordinating and controlling electronic displays, where the control center is able to create and update the exposure list in real time, with control instruction fields via dynamic booking of information, in time for exposure, from mediators, and where the exposure list enables each electronic display to be controlled, independently of other electronic displays, to receive the same or different information in accordance with the exposure list for the exposure of respective electronic display as claimed in at least claim 22 of the '334 Patent, without the authority of T-Rex Property AB.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 63 of the Amended Complaint.

64.     More specifically, the infringing devices and systems include Defendants' digital advertising and services platform, including the Defendants' "Digital Waiting Room Screen" product, which delivers, *inter alia,* "condition-specific content to patients while they wait" in the "waiting rooms of physician practices across all 50 states." *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen "is placed in the waiting rooms of physician practices across all 50 states" and is intended to "deliver[] condition-specific content to patients while they wait."  Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 64 of the Amended Complaint.

65.     Defendants' digital advertising and services platform generates an exposure list that comprises control instructions for coordinating and controlling electronic displays with regard to what is exposed, when it is exposed, where it is exposed, and for how long it is exposed. For example, Defendants' digital advertising and services platform delivers "condition-specific content to patients" and uses "smart playlist technology [to curate] programming that is customized to each office according to its specific patient population." *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen is intended to "deliver[] condition-specific content to patients."  ContextMedia admits that "[u]sing smart playlist technology, ContextMedia curates programming that is customized to each office according to

its specific patient population." Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 65 of the Amended Complaint.

66. Defendants' digital advertising and services platform uses a control center for coordinating and controlling electronic displays, wherein the control center is able to create and update the exposure list in real time with control instruction fields via dynamic booking of information in time for exposure from mediators. For example, upon information and belief, Defendants' digital advertising and services platform includes a centralized computer or server wherein "content is refreshed daily and sent to screens based on patient demographic data." *See, e.g.,* http://partner.contextmediahealth.com/assets/pdfs/digital_waiting_room_sales_sheet.pdf (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that, with respect to the Digital Waiting Room Screen, content may be "refreshed daily and sent to screens based on patient demographic data." Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 66 of the Amended Complaint.

67. The exposure list of Defendants' digital advertising and services platform enables each electronic display to be controlled, independently of other electronic displays, to receive the same or different information in accordance with the exposure list for exposure of the respective electronic display. For example, Defendants' digital advertising and services platform "delivers condition-specific content to patients while they wait." Additionally, the Defendants "[curate] programming that is customized to each office according to its specific patient population." *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen is intended to "deliver[] condition-specific content to patients while they wait." ContextMedia admits that "[u]sing smart playlist technology, ContextMedia curates programming that is customized to each office according to its specific patient population." Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 67 of the Amended Complaint.

68. Upon information and belief, in violation of 35 U.S.C. § 271(a), Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '334 Patent by making, using, offering for sale, selling, or importing

devices or systems, in this judicial district and elsewhere in the United States (directly or through intermediaries), that comprise a computerized control center means, where the control center has communication interfaces against; a computerized means for coordinating and controlling electronic displays; and an exposure handler means whereby the control center functions, in real time and through the medium of the exposure handler, to create and update an exposure list that has control instruction fields, via dynamic booking of display information from mediators and where the exposure list contains control instructions, that coordinate and control the electronic displays in question with respect to what shall be exposed, where it shall be exposed, when it shall be exposed, and for how long it shall be exposed, and enables each electronic display, independently of other electronic displays, to receive the same or different information according to the exposure list for exposure or display by the respective electronic display as claimed in at least claim 32 of the '334 Patent, without the authority of T-Rex Property AB.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 68 of the Amended Complaint.

69.     More specifically, the infringing devices and systems include Defendants' digital advertising and services platform, including the Defendants' "Digital Waiting Room Screen" product, which delivers, *inter alia,* "condition-specific content to patients while they wait" in the "waiting rooms of physician practices across all 50 states." *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen "is placed in the waiting rooms of physician practices across all 50 states" and is intended to "deliver[] condition-specific content to patients while they wait."  Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 69 of the Amended Complaint.

70.     Defendants' digital advertising and services platform comprises a computerized control center means where the control center has a communication interface. Upon information and belief, Defendants' digital advertising and services platform includes a centralized computer and/or server, wherein each computer and/or server includes a way to connect to the Internet. For example, "[p]rogramming is delivered via Internet directly to the mini-PC mounted to the back of the TV." This illustrates that a centralized control center includes at least one communications interface because it delivers programming to each display via an Internet connection.

**ANSWER**:

ContextMedia admits that, with respect to the Digital Waiting Room Screen, "[p]rogramming is delivered via Internet directly to the mini-PC mounted to the back of the TV." Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 70 of the Amended Complaint.

71.     Defendants' digital advertising and services platform further comprises exposure handler means whereby the control center functions, in real time and through the medium of the exposure handler, to create and update an exposure list that has control instruction fields, via dynamic booking of display information from mediators. For example, "[c]ontent [is] refreshed daily and sent to screens based on patient demographic data." *See, e.g.,* http://partner.contextmediahealth.com/assets/pdfs/digital_waiting_room_sales_sheet.pdf     (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that, with respect to the Digital Waiting Room Screen, content may be "refreshed daily and sent to screens based on patient demographic data."  Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 71 of the Amended Complaint.

72.     The exposure list of Defendants' digital advertising and services platform contains control instructions, that coordinate and control the electronic displays in question with respect to what shall be exposed, where it shall be exposed, when it shall be exposed, and for how long it shall be exposed, and enables each electronic display, independently of other electronic displays, to receive the same or different information according to the exposure list for exposure or display by the respective electronic display. For example, upon information and belief, the Defendants deliver, via its content providers, "condition-specific content to patients" and use "smart playlist technology [to curate] programming that is customized to each office according to its specific patient population." *See, e.g.,* http://www.contextmediainc.com/whatwe-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen is intended to "deliver[] condition-specific content to patients."  ContextMedia admits that "[u]sing smart playlist technology, ContextMedia curates programming that is customized to each office according to

its specific patient population." Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 72 of the Amended Complaint.

73. Upon information and belief, Defendants have directly infringed and continue to directly infringe one or more claims of the '334 Patent, including at least claims 22 and 32, by operating their digital advertising network in Illinois and elsewhere in the United States.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 73 of the Amended Complaint.

74. Defendants have had knowledge of the '334 Patent since at least the date that the Complaint was served.

**ANSWER**:

ContextMedia admits that it has had knowledge of the '334 Patent since the date that the Complaint was served. Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 74 of the Amended Complaint.

75. Because of Defendants' infringing activities, T-Rex Property AB has suffered damages and will continue to suffer damages in the future. T-Rex Property AB is entitled to recover from Defendants the damages sustained by T-Rex Property AB as a result of Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 75 of the Amended Complaint.

**COUNT III – INFRINGEMENT OF U.S. Patent No. 6,430,603**

76. The allegations set forth in the foregoing paragraphs 1 through 60 are hereby realleged and incorporated herein by reference.

**ANSWER**:

ContextMedia incorporates by reference its responses to the preceding allegations of paragraphs 1 through 75 above as though stated herein.

77.     Upon information and belief, in violation of 35 U.S.C. § 271(a), Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the '603 Patent by making, using, offering for sale, selling, or importing devices or systems, in this judicial district and elsewhere in the United States (directly or through intermediaries), that perform the steps of scheduling the presentation of video or still-image content at selected time slots on selected electronic displays, that are provided at various geographic locations and interconnected by a network, receiving video or still-image content from a content provider, communicating scheduled content to respective server devices associated with corresponding selected electronic displays and initiating display of the content at selected times on corresponding selected electronic displays of the network, where split screen images can be displayed as claimed in at least claims 42 and 43 of the '603 Patent, without the authority of T-Rex Property AB.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 77 of the Amended Complaint.

78.     More specifically, the infringing devices and systems include Defendants' digital advertising and services platform, including the Defendants' "Digital Waiting Room Screen" product, which delivers, *inter alia,* "condition-specific content to patients while they wait" in the "waiting rooms of physician practices across all 50 states." *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen "is placed in the waiting rooms of physician practices across all 50 states" and is intended to "deliver[] condition-specific content to patients while they wait."  Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 78 of the Amended Complaint.

79.     Defendants' digital advertising and services platform comprises a network that interconnects a plurality of electronic displays that are provided at various geographic locations. For example, "[t]he Digital Waiting Room Screen is placed in the waiting rooms of physician practices across all 50 states" and "[p]rogramming is delivered via Internet directly to the mini-PC mounted to the back of the TV." *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last              visited              April              28,              2016);

http://partner.contextmediahealth.com/assets/pdfs/digital_waiting_room_sales_sheet.pdf (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen "is placed in the waiting rooms of physician practices across all 50 states." ContextMedia admits that, with respect to the Digital Waiting Room Screen, "[p]rogramming is delivered via Internet directly to the mini-PC mounted to the back of the TV." Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 79 of the Amended Complaint.

80. Defendants' digital advertising and services platform further comprises a means for scheduling the presentation of video or still-image content at selected time slots on selected electronic displays, which are part of the network, and receiving video or still-image content from a content provider. For example, Defendants' digital advertising and services platform "delivers condition-specific content to patients while they wait in a waiting room" where the content is provided by "patient education producers and health organizations" and advertisers. *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016); http://www.contextmediahealth.com/faq/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen "is placed in the waiting rooms of physician practices" and is intended to "deliver[] condition-specific content to patients while they wait." ContextMedia admits that the Digital Waiting Room Screen delivers content from "patient education producers and health organizations." Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 80 of the Amended Complaint.

81. Additionally, the Defendants' digital advertising and services platform delivers "condition-specific content to patients" and uses "smart playlist technology [to curate] programming that is customized to each office according to its specific patient population." *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its Digital Waiting Room Screen is intended to "deliver[] condition-specific content to patients." ContextMedia admits that "[u]sing smart playlist

technology, ContextMedia curates programming that is customized to each office according to its specific patient population." Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 81 of the Amended Complaint.

82. Defendants' digital advertising and services platform further comprises transmission means in communication with the receiving means for communicating scheduled content to respective server devices that are associated with corresponding selected electronic displays, where each associated device initiates display of the video or still image content as selected times on a corresponding electronic display. For example, "[p]rogramming is delivered via Internet directly to the mini-PC mounted to the back of the TV." *See, e.g.,* http://www.contextmediahealth.com/faq/ (last visited April 28, 2016). Additionally, the programming is "condition specific" and Defendants' digital advertising and services platform "curates programming that is customized to each office according to its specific patient population." *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that, with respect to the Digital Waiting Room Screen, "[p]rogramming is delivered via Internet directly to the mini-PC mounted to the back of the TV." ContextMedia admits that its Digital Waiting Room Screen is intended to "deliver[] condition-specific content to patients." ContextMedia admits that "[u]sing smart playlist technology, ContextMedia curates programming that is customized to each office according to its specific patient population." Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 82 of the Amended Complaint.

83. Defendants' digital advertising and services platform further includes means for enabling split screen images to be displayed at the electronic display. For example, the Defendants' website shows a display screen, which is intended for a waiting room, displaying video content on one section of the screen and weather and breaking news on another section. *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its website shows a Digital Waiting Room Screen displaying video content, weather, and news. Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 83 of the Amended Complaint.

84. Further, the split screen capability of Defendants' digital advertising and services platform is utilized to present a still image portion of the image in one display area, and one of real time video, near real time video, or still frame in a second display area. For example, the Defendants' website shows a display screen, which is intended for a waiting room, displaying video content on one section of the screen and weather and breaking news on another section. *See, e.g.,* http://www.contextmediainc.com/what-we-do/ (last visited April 28, 2016).

**ANSWER**:

ContextMedia admits that its website shows a Digital Waiting Room Screen displaying video content, weather, and news. Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 84 of the Amended Complaint.

85. Upon information and belief, Defendants have directly infringed and continue to directly infringe one or more claims of the '603 Patent, including at least claims 42 and 43, by operating their digital advertising network in Illinois and elsewhere in the United States.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 85 of the Amended Complaint.

86. Defendants have had knowledge of the '603 Patent since at least the date that the Complaint was served.

**ANSWER**:

ContextMedia admits that it has had knowledge of the '603 Patent since the date that the Complaint was served. Except as expressly admitted, ContextMedia denies all other allegations set forth in paragraph 86 of the Amended Complaint.

87. Because of Defendants' infringing activities, T-Rex Property AB has suffered damages and will continue to suffer damages in the future. T-Rex Property AB is entitled to recover from Defendants the damages sustained by T-Rex Property AB as a result of Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less

than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER**:

ContextMedia denies the allegations set forth in paragraph 87 of the Amended Complaint.

## JURY DEMAND

The request for a jury trial set forth in the Complaint requires no response.

## RESPONSE TO PRAYER FOR RELIEF

ContextMedia incorporates by reference its responses to paragraphs 1-87 of the Amended Complaint and denies that T-Rex is entitled to any relief whatsoever.

## CONTEXTMEDIA'S DEFENSES

### FIRST DEFENSE

The Amended Complaint fails to state a claim upon which relief can be granted, at least because the claims of the patents-in-suit are invalid under 35 U.S.C. § 101 as directed to ineligible subject matter, e.g., the patents-in-suit claim merely abstract ideas. *See, e.g.*, '470 Patent, asserted claim 25 ("A method of selectively displaying digital information . . . comprising: receiving control instructions . . . using said control instructions to generate an exposure list . . . specifying . . . i) what information content is to be displayed; ii) at which . . . locations [it] is to be displayed; iii) when [it] is to be displayed . . . and iv) how long [it] is to be displayed . . . displaying images . . . and permitting said exposure list to be dynamically updated."); '334 Patent, asserted claim 22 ("A method for coordinating and controlling electronic displays . . . for exposing information . . . compris[ing] . . . generating an exposure list comprising control instructions for coordinating and controlling electronic displays with regard to what shall be exposed, when it shall be exposed, where it shall be exposed and for how long it

shall be exposed; using a control center for coordinating and controlling electronic displays . . . and wherein the exposure list enables each electronic display to be controlled . . . .”); ‘603 Patent, claim 13 (upon which the asserted claims are dependent) (“A system for presenting video or still-image content . . . comprising: a network interconnecting a plurality of electronic displays . . . means for scheduling the presentation of video or still-image content . . . [and] transmission means in communication with said receiving means for communicating scheduled content to respective server devices . . . initiating display of said video or still-image content . . . .”).

Furthermore, the claims of the patents-in-suit directed to ineligible subject matter lack an inventive concept in the application of the abstract idea because the claims merely recite conventional, generic computer, network, and display technology. *See, e.g.*, ‘334 Patent, drawing (illustrating that the claimed arrangement and method are composed of generic computers, servers, modem, databases, and electronic displays connected by well-known and readily available networks); ‘470 Patent (substantially the same); ‘603 Patent, claim 13 and specification (referring to a conventional network, receiving and transmission means which “may take a number of forms,” and electronic displays, means for scheduling, and servers, all of which were readily available on the market or well-known). Therefore, T-Rex has failed to state a claim upon which relief can be granted because the patents-in-suit are invalid as directed to ineligible subject matter under 35 U.S.C. § 101.

## SECOND DEFENSE

ContextMedia has not engaged and is not engaging in any act that constitutes infringement, either literally or under the doctrine of equivalents, willfully or otherwise, of any valid and enforceable claim of any of the patents-in-suit. T-Rex's claims are also barred in whole or in part by prosecution history estoppel.

**THIRD DEFENSE**

The claims of the patents-in-suit are invalid for failure to meet one or more of the conditions of patentability as specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103 and/or 112 *et seq*. For example, the claims of the patents-in-suit are invalid under 35 U.S.C. § 101 as directed to ineligible subject matter, e.g., the patents-in-suit claim merely abstract ideas. *See, e.g.*, '470 Patent, asserted claim 25 ("A method of selectively displaying digital information . . . comprising: receiving control instructions . . . using said control instructions to generate an exposure list . . . specifying . . . i) what information content is to be displayed; ii) at which . . . locations [it] is to be displayed; iii) when [it] is to be displayed . . . and iv) how long [it] is to be displayed . . . displaying images . . . and permitting said exposure list to be dynamically updated."); '334 Patent, asserted claim 22 ("A method for coordinating and controlling electronic displays . . . for exposing information . . . compris[ing] . . . generating an exposure list comprising control instructions for coordinating and controlling electronic displays with regard to what shall be exposed, when it shall be exposed, where it shall be exposed and for how long it shall be exposed; using a control center for coordinating and controlling electronic displays . . . and wherein the exposure list enables each electronic display to be controlled . . . ."); '603 Patent, claim 13 (upon which the asserted claims are dependent) ("A system for presenting video or still-image content . . . comprising: a network interconnecting a plurality of electronic displays . . . means for scheduling the presentation of video or still-image content . . . [and] transmission means in communication with said receiving means for communicating scheduled content to respective server devices . . . initiating display of said video or still-image content . . . .").

Furthermore, the claims of the patents-in-suit directed to ineligible subject matter lack an inventive concept in the application of the abstract idea because the claims merely recite conventional, generic computer, network, and display technology. *See, e.g.*, '334 Patent, drawing (illustrating that the claimed arrangement and method are composed of generic computers, servers, modem, databases, and electronic displays connected by well-known and readily available networks); '470 Patent (substantially the same); '603 Patent, claim 13 and specification (referring to a conventional network, receiving and transmission means which "may take a number of forms," and electronic displays, means for scheduling, and servers, all of which were readily available on the market or well-known). Therefore, T-Rex has failed to state a claim upon which relief can be granted because the patents-in-suit are invalid as directed to ineligible subject matter under 35 U.S.C. § 101.

At least the asserted claims of the patents-in-suit are also invalid under 35 U.S.C. §§ 102 and/or 103 in view of the prior art. For example, at least claims 25 and 26 of the '470 patent are invalid as anticipated by and/or obvious in view of at least U.S. Patent No. 5,572,653 and U.S. Patent No. 7,287,001, which disclose every element either alone or in combination of claims 25 and 26. Similarly, at least claims 22 and 32 of the '334 patent are invalid as anticipated by and/or obvious in view of at least U.S. Patent No. 5,572,653 and U.S. Patent No. 7,287,001, which disclose every element either alone or in combination of claims 22 and 32. A person of ordinary skill in the art would have been readily motivated to combine U.S. Patent No. 5,572,653 and U.S. Patent No. 7,287,001. At least claims 42 and 43 of '603 patent are invalid as anticipated by and/or obvious in view of at least U.S. Application Publication No. 2006/0050012 and U.S. Patent No. 7,051,351, which disclose every element either alone or in combination of

claims 42 and 43. A person of ordinary skill in the art would have been readily motivated to combine U.S. Application Publication No. 2006/0050012 and U.S. Patent No. 7,051,351.

The patents-in-suit are also invalid for being indefinite, lacking of written description support, and/or lacking enablement under 35 U.S.C. § 112. For example, the '470 and '334 patents are at least invalid for lack of enablement because the patents require "specifically developed software" in order to "achiev[e] a purposeful digital information system according to the present invention." *See* '470 Patent col. 13 ll. 8-11, '334 Patent col. 14 ll. 1-4. The patents fail to, however, identify the required software or explain how to "write [the] specific software," despite going into detail about why the "programs" "available at present" "will not function effectively for three reasons." *See* '470 Patent col. 13 ll. 8-36 (the "specifically developed software . . . will not be described in more detail here"); '334 Patent col. 14 ll. 1-30 (same).

### FOURTH DEFENSE

T-Rex's claims are barred or otherwise limited under principles of equity, including waiver, laches, estoppel, and/or acquiescence. For example, T-Rex's claims are barred by waiver, laches, estoppel, and/or acquiescence at least because T-Rex delayed  filing suit for an unreasonable and inexcusable length of time from the time that it knew or reasonably should have known of ContextMedia's alleged infringement, and the delay caused at least material prejudice and economic injury to ContextMedia.

### FIFTH DEFENSE

T-Rex's right to seek damages is limited or barred, including without limitation by 35 U.S.C. §§ 286 and 287.

### SIXTH DEFENSE

T-Rex is barred by 35 U.S.C. § 288 from recovering any costs associated with this suit.

### SEVENTH DEFENSE

T-Rex may not seek injunctive relief against ContextMedia because the alleged damages are not immediate or irreparable. The alleged damages are not immediate or irreparable for various reasons, including, but not limited to, the fact that two of the patents-in-suit are expired and, upon information and belief, T-Rex is a non-practicing entity.

### EIGHTH DEFENSE

T-Rex has suffered no damages for various reasons, including, but not limited to, the fact that upon information and belief, T-Rex is a non-practicing entity.

### NINTH DEFENSE

This is an exceptional case, and ContextMedia is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

### RESERVATION OF DEFENSE

ContextMedia reserves all other defenses that may now exist or in the future may become available based on discovery or other proceedings and further factual investigation, and specifically reserves the right to amend its pleadings to assert any such additional defenses or claims.

### CONTEXTMEDIA'S COUNTERCLAIMS

1.     Defendants and Counterclaim-Plaintiffs ContextMedia, Inc. and ContextMedia Health, LLC ("ContextMedia") counterclaim against Plaintiff and Counterclaim-Defendant T-Rex Property AB ("T-Rex") as follows:

### PARTIES

2.     ContextMedia, Inc. is an Illinois corporation with its principal place of business at 330 N. Wabash Ave., Suite 2500, Chicago, Illinois.

3.    ContextMedia Health, LLC is a Delaware limited liability corporation with its principal place of business at 330 N. Wabash Ave., Suite 2500, Chicago, Illinois.

4.    By its Complaint, T-Rex is a company organized and existing under the laws of Sweden with its principal place of business at Vårvägen 6, 18274 Stocksund, Sweden.

### JURISDICTION AND VENUE

5.    These Counterclaims seek a declaratory judgment of non-infringement, patent invalidity, and unenforceability arising under the Patent Laws of the United States, Title 35 of the United States Code.

6.    This Court has jurisdiction over the subject matter of these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

7.    The venue requirements of 28 U.S.C. §§ 1391 and 1400(b) are satisfied.

### FIRST COUNTERCLAIM
### (DECLARATION OF NON-INFRINGEMENT OF THE '470 PATENT)

8.    ContextMedia realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-7.

9.    T-Rex, by its Complaint, alleges that it is the owner of U.S. Patent No. RE39,470 ("the '470 patent") and that ContextMedia is directly infringing the '470 patent.

10.    No accused product or method, made, used, sold, offered for sale, or imported by ContextMedia constitutes an infringement, either literal or under the doctrine of equivalents, of any valid and enforceable claim of the '470 patent.

11.    An actual, justiciable controversy exists between the parties by virtue of T-Rex's Amended Complaint and ContextMedia's Answer as to the non-infringement of the '470 patent.

12.    The baseless allegations of patent infringement made by T-Rex against ContextMedia are causing irreparable damage to ContextMedia.

13.     ContextMedia is entitled to judgment by this Court declaring all claims of the '470 patent not infringed by ContextMedia.

14.     Because the conduct of T-Rex renders this case to be "exceptional" under 35 U.S.C. § 285, ContextMedia is entitled to recover its reasonable costs, expenses and attorneys' fees.

**SECOND COUNTERCLAIM**
**(DECLARATION OF NON-INFRINGEMENT OF THE '334 PATENT)**

15.     ContextMedia realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-7.

16.     T-Rex, by its Complaint, alleges that it is the owner of U.S. Patent No. 7,382,334 ("the '334 patent") and that ContextMedia is directly infringing the '334 patent.

17.     No accused product or method, made, used, sold, offered for sale, or imported by ContextMedia constitutes an infringement, either literal or under the doctrine of equivalents, of any valid and enforceable claim of the '334 patent.

18.     An actual, justiciable controversy exists between the parties by virtue of T-Rex's Amended Complaint and ContextMedia's Answer as to the non-infringement of the '334 patent.

19.     The baseless allegations of patent infringement made by T-Rex against ContextMedia are causing irreparable damage to ContextMedia.

20.     ContextMedia is entitled to judgment by this Court declaring all claims of the '334 patent not infringed by ContextMedia.

21.     Because the conduct of T-Rex renders this case to be "exceptional" under 35 U.S.C. § 285, ContextMedia is entitled to recover its reasonable costs, expenses and attorneys' fees.

**THIRD COUNTERCLAIM**

**(DECLARATION OF NON-INFRINGEMENT OF THE '603 PATENT)**

22.　　ContextMedia realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-7.

23.　　T-Rex, by its Complaint, alleges that it is the owner of U.S. Patent No. 6,430,603 ("the '603 patent") and that ContextMedia is directly infringing the '603 patent.

24.　　No accused product or method, made, used, sold, offered for sale, or imported by ContextMedia constitutes an infringement, either literal or under the doctrine of equivalents, of any valid and enforceable claim of the '603 patent.

25.　　An actual, justiciable controversy exists between the parties by virtue of T-Rex's Amended Complaint and ContextMedia's Answer as to the non-infringement of the '603 patent.

26.　　The baseless allegations of patent infringement made by T-Rex against ContextMedia are causing irreparable damage to ContextMedia.

27.　　ContextMedia is entitled to judgment by this Court declaring all claims of the '603 patent not infringed by ContextMedia.

28.　　Because the conduct of T-Rex renders this case to be "exceptional" under 35 U.S.C. § 285, ContextMedia is entitled to recover its reasonable costs, expenses and attorneys' fees.

**FOURTH COUNTERCLAIM**
**(DECLARATION OF INVALIDITY OF THE '470 PATENT)**

29.　　ContextMedia realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-7.

30.　　T-Rex, by its Complaint, alleges that it is the owner of U.S. Patent No. RE39,470 ("the '470 patent") and that ContextMedia is directly infringing the '470 patent.

31.     The '470 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.*

32.     The claims of the '470 patent are invalid under 35 U.S.C. § 101 as directed to ineligible subject matter, e.g., the patents-in-suit claim merely abstract ideas. *See, e.g.*, '470 Patent, asserted claim 25 ("A method of selectively displaying digital information . . . comprising: receiving control instructions . . . using said control instructions to generate an exposure list . . . specifying . . . i) what information content is to be displayed; ii) at which . . . locations [it] is to be displayed; iii) when [it] is to be displayed . . . and iv) how long [it] is to be displayed . . . displaying images . . . and permitting said exposure list to be dynamically updated."). Furthermore, the claims of the '470 patent directed to ineligible subject matter lack an inventive concept in the application of the abstract idea as the claims merely recite conventional, generic computer, network, and display technology. *See, e.g.*, '470 Patent, drawing (illustrating that the claimed method and system are composed of generic computers, servers, modem, databases, and electronic displays connected by well-known and readily available networks).

33.     At least the asserted claims of the '470 patent are also invalid under 35 U.S.C. §§ 102 and/or 103 in view of the prior art. For example, at least claims 25 and 26 of the '470 patent are invalid as anticipated by and/or obvious in view of at least U.S. Patent No. 5,572,653 and U.S. Patent No. 7,287,001, which disclose every element either alone or in combination of claims 25 and 26. A person of ordinary skill in the art would have been readily motivated to combine U.S. Patent No. 5,572,653 and U.S. Patent No. 7,287,001.

34.    At least the asserted claims of the '470 patent are also invalid for being indefinite, lacking written description support, and/or lacking enablement under 35 U.S.C. § 112.  For example, the '470 patent is at least invalid for lack of enablement because the patent requires "specifically developed software" in order to "achiev[e] a purposeful digital information system according to the present invention." *See* '470 Patent col. 13 ll. 8-11.  The patent fails to, however, identify the required software or explain how to "write [the] specific software," despite going into detail about why the "programs" "available at present" "will not function effectively for three reasons." *See* '470 Patent col. 13 ll. 8-36 (the "specifically developed software . . . will not be described in more detail here").

35.    An actual, justiciable controversy exists between the parties by virtue of T-Rex's Amended Complaint and ContextMedia's Answer as to the invalidity of the '470 patent.

36.    The baseless allegations of patent infringement made by T-Rex against ContextMedia are causing irreparable damage to ContextMedia.

37.    ContextMedia is entitled to judgment by this Court declaring all claims of the '470 patent invalid.

38.    Because the conduct of T-Rex renders this case to be "exceptional" under 35 U.S.C. § 285, ContextMedia is entitled to recover its reasonable costs, expenses and attorneys' fees.

**FIFTH COUNTERCLAIM**
**(DECLARATION OF INVALIDITY OF THE '334 PATENT)**

39.    ContextMedia realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-7.

40.    T-Rex, by its Complaint, alleges that it is the owner of U.S. Patent No. 7,382,334 ("the '334 patent") and that ContextMedia is directly infringing the '334 patent.

41.     The '334 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.*

42.     The claims of the '334 patent are invalid under 35 U.S.C. § 101 as directed to ineligible subject matter, e.g., the patents-in-suit claim merely abstract ideas. *See, e.g.*, '334 Patent, asserted claim 22 ("A method for coordinating and controlling electronic displays . . . for exposing information . . . compris[ing] . . . generating an exposure list comprising control instructions for coordinating and controlling electronic displays with regard to what shall be exposed, when it shall be exposed, where it shall be exposed and for how long it shall be exposed; using a control center for coordinating and controlling electronic displays . . . and wherein the exposure list enables each electronic display to be controlled . . . ."). Furthermore, the claims of the '334 patent directed to ineligible subject matter lack an inventive concept in the application of the abstract idea as the claims merely recite conventional, generic computer, network, and display technology. *See, e.g.*, '334 Patent, drawing (illustrating that the claimed method and arrangement are composed of generic computers, servers, modem, databases, and electronic displays connected by well-known and readily available networks).

43.     At least the asserted claims of the '334 patent are also invalid under 35 U.S.C. §§ 102 and/or 103 in view of the prior art. For example, at least claims 22 and 32 of the '334 patent are invalid as anticipated by and/or obvious in view of at least U.S. Patent No. 5,572,653 and U.S. Patent No. 7,287,001, which disclose every element either alone or in combination of claims 22 and 32. A person of ordinary skill in the art would have been readily motivated to combine U.S. Patent No. 5,572,653 and U.S. Patent No. 7,287,001.

44.     At least the asserted claims of the '334 patent are also invalid for being indefinite, lacking written description support, and/or lacking enablement under 35 U.S.C. § 112.   For example, the '334 patent is at least invalid for lack of enablement because the patent requires "specifically developed software" in order to "achiev[e] a purposeful digital information system according to the present invention." *See* '334 Patent col. 14 ll. 1-4.   The patent fails to, however, identify the required software or explain how to "write [the] specific software," despite going into detail about why the "programs" "available at present" "will not function effectively for three reasons." *See* '334 Patent col. 14 ll. 1-30 (the "specifically developed software . . . will not be described in more detail here").

45.     An actual, justiciable controversy exists between the parties by virtue of T-Rex's Amended Complaint and ContextMedia's Answer as to the invalidity of the '334 patent.

46.     The baseless allegations of patent infringement made by T-Rex against ContextMedia are causing irreparable damage to ContextMedia.

47.     ContextMedia is entitled to judgment by this Court declaring all claims of the '334 patent invalid.

48.     Because the conduct of T-Rex renders this case to be "exceptional" under 35 U.S.C. § 285, ContextMedia is entitled to recover its reasonable costs, expenses and attorneys' fees.

### SIXTH COUNTERCLAIM
### (DECLARATION OF INVALIDITY OF THE '603 PATENT)

49.     ContextMedia realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-7.

50.     T-Rex, by its Complaint, alleges that it is the owner of U.S. Patent No. 6,430,603 ("the '603 patent") and that ContextMedia is directly infringing the '603 patent.

51.    The '603 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.*

52.    The claims of the '603 patent are invalid under 35 U.S.C. § 101 as directed to ineligible subject matter, e.g., the patents-in-suit claim merely abstract ideas. *See, e.g.*, '603 Patent, claim 13 (upon which the asserted claims are dependent) ("A system for presenting video or still-image content . . . comprising: a network interconnecting a plurality of electronic displays . . . means for scheduling the presentation of video or still-image content . . . [and] transmission means in communication with said receiving means for communicating scheduled content to respective server devices . . . initiating display of said video or still-image content . . . ."). Furthermore, the claims of the '603 patent directed to ineligible subject matter lack an inventive concept in the application of the abstract idea as the claims merely recite conventional, generic computer, network, and display technology. *See, e.g.*, '603 Patent, claim 13 and specification (referring to a conventional network, receiving and transmission means which "may take a number of forms," and electronic displays, means for scheduling, and servers, all of which were readily available on the market or well-known).

53.    At least the asserted claims of the '603 patent are also invalid under 35 U.S.C. §§ 102 and/or 103 in view of the prior art.  For example, at least claims 42 and 43 of '603 patent are invalid as anticipated by and/or obvious in view of at least U.S. Application Publication No. 2006/0050012 and U.S. Patent No. 7,051,351, which disclose every element either alone or in combination of claims 42 and 43.  A person of ordinary skill in the art would have been readily motivated to combine U.S. Application Publication No. 2006/0050012 and U.S. Patent No. 7,051,351.

54. At least the asserted claims of the '603 patent are also invalid for being indefinite, lacking written description support, and/or lacking enablement under 35 U.S.C. § 112.

55. An actual, justiciable controversy exists between the parties by virtue of T-Rex's Amended Complaint and ContextMedia's Answer as to the invalidity of the '603 patent.

56. The baseless allegations of patent infringement made by T-Rex against ContextMedia are causing irreparable damage to ContextMedia.

57. ContextMedia is entitled to judgment by this Court declaring all claims of the '603 patent invalid.

58. Because the conduct of T-Rex renders this case to be "exceptional" under 35 U.S.C. § 285, ContextMedia is entitled to recover its reasonable costs, expenses and attorneys' fees.

## JURY DEMAND

ContextMedia demands a trial by jury on all issues so triable including those in the Defenses and Counterclaims.

## PRAYER FOR RELIEF

**WHEREFORE,** ContextMedia prays for judgment as follows:

A. That judgment be entered dismissing all of T-Rex's claims for relief in the Amended Complaint with prejudice;

B. That judgment be entered declaring that all claims for relief sought by T-Rex in its Amended Complaint are denied with prejudice;

C. That judgment be entered declaring that T-Rex is not entitled to any relief whatsoever;

D.      That judgment be entered declaring that ContextMedia has not infringed and is not infringing any valid and enforceable claim of the '470 patent, either literally or under the doctrine of equivalents;

E.      That judgment be entered declaring that the '470 patent is invalid;

F.      That judgment be entered declaring that ContextMedia has not infringed and is not infringing any valid and enforceable claim of the '334 patent, either literally or under the doctrine of equivalents;

G.      That judgment be entered declaring that the '334 patent is invalid;

H.      That judgment be entered declaring that ContextMedia has not infringed and is not infringing any valid and enforceable claim of the '603 patent, either literally or under the doctrine of equivalents;

I.      That judgment be entered declaring that the '603 patent is invalid;

J.      That judgment be entered declaring this case "exceptional" and awarding ContextMedia its reasonable costs and expenses in this action, including reasonable attorneys' fees under 35 U.S.C. § 285 and other applicable statutes or laws, including interest; and

K.      That ContextMedia be awarded such other and further relief as this Court may deem just and proper.

Dated:  August 29, 2016                     Respectfully submitted,

                                            /s/ Sharon A. Hwang
                                            Sharon A. Hwang (No. 6217211)
                                            Eligio C. Pimentel (No. 6230049)
                                            Robert A. Surrette (No. 6243979)
                                            Katherine E. Ramlose (No. 6321349)
                                            McANDREWS, HELD & MALLOY, LTD.
                                            500 West Madison Street, Suite 3400
                                            Chicago, Illinois 60661
                                            Telephone: (312) 775-8000

                                            *Attorneys for Defendants,*
                                            ContextMedia Inc. and ContextMedia Health LLC

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2016 a true and correct copy of the foregoing

**DEFENDANT'S ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT** was served on counsel of record by electronic means:

*/s/ Sharon A. Hwang*